**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 05-27ML** |
| | : | |
| **PEDRO HERNANDEZ-RODRIGUEZ** | : | |
| **a/k/a Kiko** | : | |

**GOVERNMENT'S OPPOSITION**
**TO THE DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

The United States, by and through its attorneys, Robert C. Corrente, United States Attorney, and Mary E. Rogers, Assistant United States Attorney, hereby opposes the Defendant's "Motion to Withdraw Guilty Plea", for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

MARY E. ROGERS
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 28th day of September, 2005, a copy of the within "Government's Objection and Memorandum In Support of Government's Opposition to Defendant's Motion to Withdraw Guilty Plea" was mailed, postage prepaid to:

James T. McCormick
128 Dorrance Street, Suite 330
Providence, RI 02903-2814

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Cr. No. 05-27ML** |
| | : | |
| **PEDRO HERNANDEZ-RODRIGUEZ** | : | |
| **a/k/a Kiko** | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO THE DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

## INTRODUCTION

On June 17, 2005, after a written Plea Agreement between the government and the Defendant was filed, this Court commenced a change of plea hearing. The hearing was continued to July 7, 2005, at which time the Defendant pled guilty to Conspiracy to distribute and to possess with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B). Now, two and one half months later, after the issuance of the Pre-Sentence Investigation Report and just a few weeks before the sentencing date of October 7, 2005, the Defendant has moved to withdraw his plea. The Defendant is asking the Court to ignore the Defendant's admissions under oath that he conspired to distribute and to possess with intent to 5 grams or more of cocaine base. He has not provided a single fact that did not exist at the time he changed his plea to guilty. There is no legitimate basis for the withdrawal of the Defendant's guilty plea. The Defendant is asking to withdraw his plea, not on the basis of guilt or innocence, but rather based

upon his concern of the potential length of sentence. This is not a valid basis for withdrawal of a plea of guilty. As discussed below, every one of the factors adopted by the First Circuit for evaluating a motion to withdraw a plea militates against granting the Defendant's motion.

## BACKGROUND

The Defendant executed a written Plea Agreement on June 13, 2005. On June 30, 2005, the Defendant signed an amended plea agreement with a correction as to the charge to which he was pleading, and a modification, allowing the Defendant to argue for a sentence below the guidelines. The Defendant had been advised that if he did argue for a sentence below the guidelines, the government could then recommend a sentence anywhere within the guideline range. In accordance with that Amended Agreement, the Defendant entered a plea of guilty during a change of plea hearing held on July 7, 2005. The United States Office of Probation filed its Pre-Sentence Investigation Report on August 29, 2003. The Defendant did not file his motion to withdraw his plea until September 13, 2005.

## ARGUMENT

### I. Introduction.

It is well-settled that "there is no absolute right to withdraw a guilty plea prior to sentencing." United States v.

Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997). Rather, a Defendant may withdraw his plea prior to sentencing "only for a fair and just reason." Id. See Fed.R.Crim.P. 11(d)(2)(B).[1] The Defendant bears the burden of persuasion. Marrero-Rivera, 124 F.3d at 347.

The Court "must consider several factors in weighing whether a defendant meets this burden." United States v. Isom, 85 F.3d 831, 834 (1st Cir. 1996). The "most significant" factor is "whether the plea was voluntary, intelligent and knowing, within the meaning of Federal Rule of Criminal Procedure 11." Id. (quoting United States v. Cotal-Crespo, 47 F.3d 1, 3-4 (1st Cir. 1991)). The remaining, less significant factors are: "(1) the force and plausibility of the proffered reason; (2) the timing of the request; (3) whether the Defendant has asserted his legal innocence; and (4) whether the parties had reached a plea agreement." Id. Even if a Defendant is able to "meet the strictures of this four part test," the Court "still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the Defendant is permitted to alter his stance." Id.

[1] Prior to the 2002 Amendments to the Federal Rules of Criminal Procedure, the substance of Rule 11(d)(2)(B) was found in Rule 32(e).

## II. <u>The Defendant's Guilty Plea Was Voluntary, Intelligent And Knowing</u>.

As noted above, the "most significant" factor is whether the Defendant's plea was voluntary, intelligent and knowing, within the meaning of Rule 11. A guilty plea meets this standard if, during the plea hearing, three "core" Rule 11 concerns were satisfied: "(1) voluntariness -- i.e., absence of coercion; (2) understanding of the charge; and (3) knowledge of the consequences of the guilty plea." <u>Marrero-Rivera</u>, 124 F.3d at 348 & n.7. <u>Accord</u>, <u>Isom</u>, 85 F.3d at 835.

The Defendant does not, and cannot, dispute that these three concerns were satisfied during the July 7, 2005 plea hearing. When the Defendant expressed a concern during the first change of plea hearing on June 17. 2005, the Defendant was given a continuance to consult further with his attorney. <u>Transcript (6/17/05)</u> ("<u>Tr.(6/17/05)</u>"), at pp. 12-13. On July 7, 2005, the Change of Plea Hearing resumed. First, the Court again ensured that the Defendant understood the charge against him. After being placed under oath, the Defendant stated that he had received a copy of the Indictment, and had discussed the charges set forth in it with his attorney. <u>Tr. 7/7/05</u>, at pp. 2-3, 5-6. The Defendant stated that he had reviewed the Plea Agreement, and understood its terms. <u>Tr. 7/7/05</u>, at pp. 6. The Defendant was told that if he had any questions or did not understand any

portion of the plea agreement that he should ask the Court. Tr. 7/7/05, at pp. 6-7. The Court went through each of the terms of the plea agreement, and after each section asked the Defendant whether he understood, to which the Defendant replied, "Yes". Tr. 7/7/05, at pp. 7-18. Indeed, the Defendant asked questions regarding the potential sentence he could receive, and the Court told him that there were no guarantees. Tr. 7/7/05, at pp. 8-9. The Defendant asked the Court questions regarding the difference between crack cocaine and cocaine base. The Court then suggested that the Defendant take additional time to speak with his attorney. After consulting with his attorney, the Defendant then agreed that the substance was cocaine base in the form of crack cocaine. Tr. 7/7/05, at pp. 12-15. The Court repeatedly told the Defendant that the Defendant could not come back on the date of sentencing and change his mind. The Court stated at one point that the Defendant could not come back "on the day of sentencing and say, Oh, no, it wasn't crack, oh, no, it wasn't cocaine base, it was something else, because today you're admitting that it was cocaine base in the form of crack. Do you understand that?" And the Defendant replied, "Yes, your Honor." Tr. 7/7/05, at p. 14.

Second, the Court ensured that the Defendant's plea of guilty was voluntary. The Defendant agreed that no one had made him any promises or assurances that were not set forth in the plea agreement. Tr. 7/7/05, at p. 18. The Defendant also agreed

that no one had attempted to force him to plead guilty and that he was doing so of his own free will because he was guilty. Tr. 7/7/05, at p. 22. After the government recited the facts, the Defendant agreed that the facts were true. Tr. 7/7/05, at pp. 25-29.

Finally, the Court ensured that the Defendant was fully aware of the consequences of his plea. Indeed, the Court painstakingly went over those consequences with the Defendant. Transcript, at pp. 12-18. Those consequences included a warning that the terms of the Plea Agreement were merely recommendations to the Court, and that the Court could reject those recommendations without permitting the Defendant to withdraw his plea of guilty and impose a sentence more severe than the sentence contemplated by the Plea Agreement. Tr. 7/7/05, at p. 8-9, 11, 15-17, 21. The Court further warned the Defendant that if the Court accepted the Defendant's plea of guilty, he was waiving his right to a trial and all rights associated with a trial. Tr. 7/7/05, at pp. 23 - 25. Having been advised of these and other consequences of his plea, and after acknowledging that he understood them, the Defendant admitted that he had conspired to distribute and possess with intent to distribute 5 grams or more of crack cocaine, and entered a plea of guilty. Tr. 7/7/05, at pp. 25-29.

Accordingly, all three of the Rule 11 "core" concerns were satisfied during the plea hearing. In United States v. Barker, a case repeatedly cited by the First Circuit in the context of motions to withdraw guilty pleas, the District of Columbia Circuit held that Defendants were not entitled to withdrawal of their pleas despite their belated assertions of innocence because they had plead guilty and because their guilty pleas were voluntary, knowing, and made with understanding of the charges against them. 514 F.2d 208, 226 n.17 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975). The Court reasoned:

> It is fundamental horn book law that a defendant who pleads guilty foregoes his opportunity to prove his innocence. If a guilty plea can be withdrawn merely because the defendant would like to regain that opportunity, the plea becomes meaningless. As we have made clear above, however, a guilty plea is an act of great significance, and withdrawal is not automatically granted simply because the defendant now decides he would rather go to trial. Of course, whenever withdrawal is denied, it is denied even if the defendant can prove his innocence.

Id. (citing North Carolina v. Alford, 400 U.S. 25 (1970)).

In this case, the Defendant does not claim he is innocent. This Court made specific findings during the plea hearing that the Defendant was acting knowingly, intelligently and voluntarily in pleading guilty, and that there was a factual basis for his plea. The Defendant does not challenge those findings. He simply asks the Court to cast them aside. Nothing could more

trivialize this Court's proceedings. The Defendant's motion should be denied.

The Defendant's acknowledgments of guilt did not end with the plea hearing. The Defendant, through his attorney, sent to the Probation Office a document entitled "Acceptance of Responsibility". The First Circuit has made its position clear that with respect to requests to withdraw guilty pleas, "'[W]e will not a permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.'" Parrilla-Tirado, 22 F.3d at 373 (quoting United States v. Pellerito, 878 F.2d 1535, 1538 (1st Cir. 1989)). "It is the policy of the law to hold litigants to their assurances." Id. See also United States v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995)(statements "made in open court during a plea hearing 'carry a strong presumption of verity'")(quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

**III. The Defendant's Two and A Half Month Delay In Filing His Motion Militates Against The Granting Of That Motion.**

"Delayed requests [for withdrawal of a guilty plea], even if made before sentencing, are generally regarded with disfavor." Parrilla-Tirado, 22 F.3d at 373. "The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable

consideration." Id. Accord, Isom, 85 F.3d at 838 ("We have repeatedly noted that the more a request is delayed - even if made before sentence is imposed - the more we will regard it with disfavor"). "'A swift change of heart' reduces the likelihood of prejudice to the government from permitting withdrawal, and strongly indicates that the plea was entered in 'haste and confusion.'" United States v. Ramos, 810 F.2d 308, 312 (1st Cir. 1987)(quoting Barker, 514 F.2d at 222). Accordingly, the First Circuit has found even small delays in the filing of a motions to withdraw pleas grounds for denying the motions. E.g., Ramos, 810 F.2d at 313 (thirteen day delay too long); United States v. Keefe, 621 F.2d 17, 18 (1st Cir. 1980) (three week delay too long); Nunez Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976) (two week delay too long). Here, the defendant did not file his motion until Ten weeks after the plea hearing.

Furthermore, "'[b]ecause the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just.'" United States v. Muriel, 111 F.3d 975, 980 (quoting United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992)). In Muriel, the First Circuit, upholding the denial of the Defendant's motion to withdraw, noted that the motion was filed only after the issuance of the Pre-Sentence Investigation Report. Id. The Court stated, "[i]f timing is indeed probative

of motive, then it would seem that [the Defendant] was actually prompted to move to withdraw his plea by disappointment with the recommended sentence in the PSI report." Id. Consistent with this rule, the First Circuit has repeatedly rejected requests to withdraw pleas filed only after the Defendant became aware of the sentence he was likely to face. E.g., Isom, 85 F.3d at 839; Parrilla-Tirado, 22 F.3d at 373; Doyle, 981 F.2d at 595. The Court perhaps put it best in Parrilla-Tirado:

> [The Defendant's] belated change of heart followed not long after the PSI report - a document which contained, inter alia, information suggesting that a stiff sentence loomed - arrived at the Court's doorstep. In [the defendant's] case then, a simple chronology of events serves to cast a long shadow over the legitimacy of his professed reasons for seeking to change course. Courts need not accept a Defendant's explanations uncritically.

22 F.3d at 373 (emphasis added).

Here too, not only did the Defendant wait two and a half months before moving to withdraw his plea, he filed his motion only after the issuance of the Pre-Sentence Investigation Report, which indicates that the Defendant faces a lengthy term of imprisonment.

## IV. **The Defendant's Plea Of Guilty Was Entered Pursuant To A Written Plea Agreement Signed A week Prior To The Plea Hearing.**

The final factor, whether the Defendant and the government had reached a plea agreement, also militates against allowing the

Defendant to withdraw his plea. This Defendant did not enter his plea of guilty in haste or under pressure, with the jury empaneled and without a written Plea Agreement. In this case, the Defendant signed an initial plea agreement on June 13, 2005. At the initial change of plea hearing on June 17, 2005, the Court continued the hearing. The Defendant signed the Amended plea agreement on June 30, 2005, and the change of plea continued on July 7, 2005. The Agreement plainly stated the crime to which the Defendant was pleading guilty, the fact that the substance was cocaine base in the form of crack cocaine and the rights that the Defendant was giving up by pleading guilty. The Defendant acknowledged his understanding of the terms of the Plea Agreement during the change of plea hearing. The Defendant does not allege, nor can he allege, that the government has breached the Plea Agreement in any way.

**CONCLUSION**

Base upon the above facts, the Defendant's motion should be denied.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

MARY E. ROGERS
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 28th day of September, 2005, a copy of the within "Government's Objection and Memorandum In Support of Government's Opposition to Defendant's Motion to Withdraw Guilty Plea" was mailed, postage prepaid to:

James T. McCormick
128 Dorrance Street, Suite 330
Providence, RI 02903-2814